UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KATIE ESPARZA,
as guardian for NIKKI CORTEZ

       Plaintiff,                                       Case No. 17-14132

vs.                                                            HON. MARK A. GOLDSMITH

CITIZENS INSURANCE
COMPANY OF THE MIDWEST,

       Defendant.
_____/

## OPINION & ORDER
## DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Dkt. 63)

In this insurance coverage action, brought under the Court's diversity jurisdiction, Plaintiff Katie Esparza, as guardian for Nikki Cortez, asserts that Defendant Citizens Insurance Company of the Midwest ("Citizens") breached an insurance policy by denying Katie and Nikki's claims for attendant care services and replacement services. Citizens filed a motion for summary judgment (Dkt. 63), in which it argues that Katie and Nikki are not entitled to coverage on these claims because they committed fraud in violation of the insurance policy. The matter is fully briefed.[1]

Because a reasonable jury could believe Katie and Nikki did not intend to mislead Citizens, summary judgment is denied.

### I.     BACKGROUND

This case arises out of a motor vehicle accident that occurred on June 24, 2016. Def. Stmt. of Material Facts ("DSMF") ¶ 1 (Dkt. 63). Nikki Cortez, a high school student at the time,

---

[1] Because oral argument will not aid the Court's decisional process, the motion will be decided based on the parties' briefing. See E.D. Mich. LR 7.1(f)(2).

1

sustained multiple injuries in the accident, including a traumatic brain injury. Pl. Stmt. of Material Facts ("PSMF") ¶ 2 (Dkt. 68); 11/4/2016 Nikki Dep., Ex. 5 to Def. Mot., at 10-11 (Dkt. 63-6). Nikki lived with her sister, Katie Esparza; her sister's husband, Joseph Esparza, and their three children. 8/22/2018 Nikki Dep., Ex. 7 to Def. Mot., at 6-8 (Dkt. 63-8).

Nikki qualified as an insured under Katie and Joseph's insurance policy with Citizens. DSMF ¶¶ 3-4. After the accident, in addition to medical care, Nikki needed assistance with daily activities such as walking, getting dressed, and taking showers. 11/4/2016 Nikki Dep. at 13. Although Katie was the primary attendant care provider, both Katie and Joseph provided this type of care. 8/22/2018 Nikki Dep. at 96. Nikki also qualified under the Citizens policy for household replacement services, which included things such as assistance with cooking, laundering clothes, and making Nikki's bed. DSMF ¶ 18.

Nikki testified that her physical recovery was painful, and while some days she was incapacitated, there were others where she had less pain and could engage in physical activity. 11/13/18 Nikki Dep., Ex. J to Def. Mot., at 59 (Dkt. 63-11). Her physical therapists instructed Nikki to move as much as she could without overdoing it. Id. at 58. On occasion, Nikki was able to dribble a basketball and shoot baskets. Id. at 8, 58. Even though Nikki could engage in physical activity when her pain was low, there were still problems with her psychological and emotional fitness. See Katie Dep. at 50, 76. Katie testified that Nikki makes "very irrational decisions," including attempting to commit suicide, and that "[e]very day is different with Nikki." Id. at 72, 74-75. And although Nikki can sometimes perform physical tasks, based on experience, Katie does not believe that Nikki has the ability to perform some tasks safely, such as iron clothes or use a microwave. Id. at 76-77.

Nikki was initially prescribed attendant care 24 hours a day, seven days per week, which continued through March 2017. DSMF ¶ 5; see also 8/22/2018 Nikki Dep. at 97-98. Katie and Nikki submitted attendant-care forms directly to Citizens until September 2016. See DSMF ¶ 7. In September, McGuffey Home Health Care hired Katie and Joseph as independent contractors to continue providing the attendant care services to Nikki. Id. The attendant care was later reduced to 20 hours a day, and by June 2017 the attendant care was down to 8 hours a day. Id. ¶ 5. According to Citizens, Nikki, Katie, and Joseph engaged in fraudulent conduct by reporting 24 hours of attendant care in January and February 2017, even though there were times when Nikki was not in the vicinity of either Katie or Joseph. DSMF ¶ 8.

Citizens engaged Superior Investigative Services to investigate whether Nikki was receiving 24 hours of attendant care. DSMF ¶ 8. In January and February 2017, the investigator took surveillance video of Nikki showing that there were periods of time when Nikki was not under Katie's or Joseph's direct physical supervision. DSMF ¶¶ 9-11. Matthew Colonius, a registered nurse and certified case manager from McGuffey Home Health Care who worked with Katie and Nikki, testified that he believed supervision requires being in close proximity to a patient "depending on what actions and what activities are being performed." Colonius Dep., Ex. Q to Def. Mot., at 56 (Dkt. 63-18). He also testified that he came up with this definition "on the spot" and that he is not aware of any written McGuffey policies regarding how employees should provide supervision to patients with traumatic brain injuries. Id. at 57, 60. He also stated that he believed Katie was providing a safe environment for Nikki. Id. at 55.

Katie does not dispute that Nikki was not in either Katie's or Joseph's direct physical supervision for short periods of time. Katie testified that Nikki's treating physicians recommended that Nikki spend small periods of time away from Katie and Joseph to gradually work her way

3

back to independence.  See PSMF ¶ 8; see also Katie Dep. at 78.  And even during those times when Nikki was not in Katie's physical presence, Katie planned the outings, tracked Nikki on GPS, stayed in contact by phone, and compensated the adults who were with Nikki for their supervision.  Katie Dep. at 77-79.

Citizens also notes that Katie testified that she provided attendant care services for the period of August 24, 2016, through August 26, 2016, when Katie was in the hospital giving birth to her third child via C-Section.  DSMF ¶ 13.  Citizens does not cite any attendant-care forms in the record seeking compensation for attendant care during this period.  Id.  Katie testified that she went into labor on the evening of August 24, 2016, so all of the household services were complete on that day.  Katie Dep. at 14.  Nikki and Joseph, as well as Katie's aunts, uncles, and grandparents, were with Katie at the hospital.  Id. at 16.  Katie still provided some attendant care services on August 25 and 26, but Joseph took on some of the supervision, and Katie arranged and paid other family members to watch and provide for Nikki during this time.  Id. at 16-18.  Joseph, however, testified that Katie was "not providing Nikki with any type of attendant care services after she just gave birth."  Joseph Dep., Ex. P to Def. Mot., at 45 (Dkt. 63-17).

Based on the forgoing, Citizens has moved for summary judgment on Katie's insurance claim.

## II. STANDARD OF REVIEW

A motion for summary judgment under Federal Rule of Civil Procedure 56 shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine dispute of material fact exists when there are "disputes over facts that might affect the outcome of the suit under the governing law."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  "[F]acts must be

4

viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380 (2007). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The moving party may discharge its burden by showing "that there is an absence of evidence to support the nonmoving party's case." Horton v. Potter, 369 F.3d 906, 909 (6th Cir. 2004) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)).

### III. ANALYSIS

Citizens argues that the evidence in this case establishes that Nikki and her care providers are not entitled to coverage on the disputed claims because they committed fraud within the meaning of Katie and Joseph's insurance policy. Mot. at 21. The policy at issue provides that Citizens does "not provide coverage for any 'insured' who has made fraudulent statements or engaged in fraudulent conduct in connection with any accident or loss for which coverage is sought under this policy." Policy, Ex. D to Def. Mot., at 13 of 15 (Dkt. 63-5). Michigan courts apply the following framework when an insurer asserts a defense under this type of fraud provision:

> To void a policy because the insured has wilfully misrepresented a material fact, an insurer must show that (1) the misrepresentation was material, (2) that it was false, (3) that the insured knew that it was false at the time it was made or that it was made recklessly, without any knowledge of its truth, and (4) that the insured made the material misrepresentation with the intention that the insurer would act upon it.

Mina v. Gen. Star Indem. Co., 555 N.W.2d 1, 5 (Mich. Ct. App. 1996), rev'd in part on other grounds, 568 N.W.2d 80 (Mich. 1997). Katie disputes only the third prong of Citizen's defense. Pl. Resp. at 20 (Dkt. 68).[2]

---

[2] Katie makes three additional arguments related to relevancy of evidence, Resp. at 14, whether Katie and Joseph are subject to the fraud provision in the insurance contract, Resp. at 15, and

5

Michigan case law makes clear that the evidence must show that the insured "actually intended" to defraud the insurer, West v. Farm Bureau Mut. Ins. Co. of Mich., 259 N.W.2d 556, 557 (Mich. 1977)—which is ordinarily a question of fact for the jury to decide, id.; see also Welch's Steak & Ribs, Inc. v. N. Pointe Ins. Co., No. 310697, 2014 WL 2154977, at *4 (Mich. Ct. App. May 22, 2014) ("It is well settled that, if no fraud was intended by the insured, the policy will not be invalidated on that ground." (citing Tubbs v. Dwelling–House Ins. Co, 48 N.W. 296, 298 (Mich. 1891)). While Michigan courts recognize that summary disposition may be appropriate where the evidence incontrovertibly establishes fraudulent intent, see, e.g., Bahri v. IDS Prop. Casualty Ins. Co., 864 N.W.2d 609, 612-613 (Mich. Ct. App. 2014), that outcome is not appropriate where a genuine issue of fact remains, see Hatcher v. Liberty Mut. Ins. Co., No. 330062, 2017 WL 1367119, at *2 (Mich. Ct. App. Apr. 13, 2017) (distinguishing Bahri as involving "uncontested evidence" of fraud). "Intent to defraud is not shown where false statements are made as a result of inadequate memory, unintentional error, confusion, or the like." Pitts v. Doe, No. 338371, 2018 WL 4002049, at *4 (Mich. Ct. App. Aug. 21, 2018) (emphasis added).

Katie argues that there was no intent to defraud Citizens. Resp. at 22. She does not dispute that there we times when she and Nikki were apart. But Katie testified that the time apart was only because Nikki's treating physicians recommended as much, and it only occurred with careful planning and supervision by Katie. Additionally, Katie paid others to supervise Nikki when Katie was not present. Even if Katie made some unintended reporting errors, unintentional errors do not amount to an intent to defraud. See Pitts, 2018 WL 4002049, at *4.

---

whether Nikki has the legal capacity to make fraudulent misrepresentations, Resp. at 23. Because Citizen's motion can be resolved on the merits, there is no need to address these arguments.

Citizens argues that Michigan courts have granted summary disposition on circumstances similar to Nikki's case. Mot. at 19-20 (citing Bahri, 864 N.W.2d at 612; Thomas v. Frankenmuth Mut. Ins. Co., No. 326744, 2016 WL 3718352 (Mich. Ct. App. July 12, 2016)). In Bahri, the Michigan Court of Appeals affirmed granting summary disposition on the plaintiff's automobile insurance claim based on a fraud provision in the insurance contract. Bahri, 864 N.W.2d at 612. The Bahri plaintiff sought recoupment of replacement services starting nineteen days before the automobile accident giving rise to the claim occurred. Id. Additionally, the appellate panel found that the insurance company's surveillance evidence of the plaintiff engaging in activities such as bending, lifting, carrying objects, running errands, and driving was inconsistent with her need for replacement services such as shopping for groceries. Id. at 612-613.

Similarly, in Thomas, the appellate panel affirmed granting summary disposition where the plaintiff was seeking reimbursement for transportation services. 2016 WL 3718352, at *1. At his deposition, the plaintiff denied driving his vehicle during the coverage period, but surveillance video showed the plaintiff driving his own vehicle on two separate occasions, including on a day when he sought reimbursement for medical transportation. Id.

The circumstances in Bahri and Thomas are distinguishable from the present case. The Bahri and Thomas plaintiffs made demonstrably false statements related to the services they were seeking, and they were observed engaging in physical activities that were inconsistent with their claims seeking assistance with physical tasks. Not so here. Nikki does not deny that she is capable of performing some physical tasks depending on her level of pain on a given day. And Nikki's needs for attendant care and replacement services are not solely based on physical limitations. Katie testified that Nikki has psychological and emotional difficulties making rational decisions. Nikki's erratic behavior changes daily, and while Nikki may be able to perform some physical

7

tasks, such as ironing clothes, a reasonable jury could find that because of Nikki's traumatic brain injury, it is not safe for Nikki to do so. In other words, there is no clear evidence "directly and specifically contradict[ing] representations" made by Katie or Nikki. Bahri, 864 N.W.2d 609, 613; see also Pitts, 2018 WL 4002049, at *4 ("[T]his case is factually distinguishable from Bahri, which involved unrebutted evidence of fraud.").

Citizens makes much of Katie's physical proximity to Nikki in January and February 2017. It relies on an "on the spot" definition of "supervision" by one of McGuffey's nurses. DSMF ¶ 14; Colonius Dep. at 56. However, the same nurse qualified his definition and testified that supervision depends "on what actions and what activities are being performed," and he conceded that he is not aware of any McGuffey written policies addressing the matter. Id. at 56-57, 60. On a motion for summary judgment, Katie's understanding of supervision, which includes planning, tracking with GPS, staying in constant phone contact, and paying others to supervise Nikki, is arguably reasonable and supports her position that she did not have the requisite intent to defraud Citizens.

Citizens also relies heavily on Joseph's testimony that Katie did not provide "Nikki with any type of attendant care services after she just gave birth." Joseph Dep. at 45 (emphasis added). It is not clear that Joseph was referring to any time period other than immediately after Katie gave birth. But even if Joseph was speaking more broadly about the care Nikki received while Katie was in the hospital, Katie testified otherwise. Katie explained that not only did she provide attendant care services to Nikki while she was in the hospital, she also ensured that Joseph and other family members supervised and provided for Nikki during that time. It is up to a jury to decide who they believe.

Taking the facts in the light most favorable to Katie and Nikki, there are genuine issues of material fact as to whether Katie, Nikki, and Joseph actually intended to defraud Citizens. Because Citizens has not shown that there is no genuine issue of fact as to whether Katie and Nikki submitted attendant care and replacement service forms with the intent to defraud Citizens, summary judgment may not be awarded on the ground that Katie, Nikki, and Joseph breached the fraud provision of the insurance policy.

## IV. CONCLUSION

For the reasons discussed above, Defendants' motion for summary judgment (Dkt. 63) is denied.

SO ORDERED.

Dated: March 6, 2020  
    Detroit, Michigan

s/Mark A. Goldsmith  
MARK A. GOLDSMITH  
United States District Judge